# OHIO NATIONAL BANK *v.* BERLIN.

---

STATUTORY CONSTRUCTION; JUDGMENT LIENS; DEEDS; ACKNOWLEDGMENTS OF JUDGMENT CREDITOR'S SUITS; PRIORITIES.

1. It is a universally accepted rule in the interpretation of statutes that they operate prospectively, in the absence of a contrary intention either expressed or necessarily to be implied.

2. The lien given to judgments by D. C. Code, sec. 1214 [31 Stat. at L. 1381, chap. 854], does not relate back to, and operate from the date of, a judgment rendered prior to its enactment.

3. In the construction of statutes, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement; and, if the words convey a definite meaning which involves no absurdity, then that meaning must be accepted, and neither the courts, nor the legislature, have the right to add to it or take from it.

4. The primary rule of statutory construction is that the intent of the legislature is to be found in the language that it has used; and, where the language is clear, it is not for the court to say that it shall be construed to embrace cases not specifically included, merely because no good reason can be assigned why they were omitted from the provisions of the statutes.

5. The provision of D. C. Code, sec. 1214, giving a lien to judgments from the time when they "shall be rendered," does not operate in favor of judgments in existence at the time of the passage of the Code, but only in favor of judgments rendered after that date.

6. *Quære,* Whether the acknowledgment of a deed before a notary is sufficient, where the words, "do hereby certify," as recited in D. C.

D. C.]                                   Syllabus.

Code, sec. 493 [31 Stat. at L. 1267, chap. 854], as originally enacted, are omitted.

7. *Quære,* Whether the acknowledgment of a deed before a notary is sufficient, where there is omission of the formal statement that the grantor acknowledged "the same to be his act and deed," and of the notary to attest the certificate formally as given under his hand and seal.

8. Under D. C. Code, sec. 493, as originally enacted, a certificate of acknowledgment of a deed is fatally defective where it does not appear that the grantor was personally known to the notary, or that his identity had been proved by the oaths of credible witnesses, and where the instrument is not identified by the recital of its date.

9. The filing of a bill in equity by a judgment creditor, to subject an equitable interest of the debtor to the satisfaction of the judgment, creates a lien on such equitable interest, and gives to the creditor the same right of preference as is acquired by the levy of an execution on the legal estate of the debtor. (Following *Gottschalk Co.* v. *Live Oak Distillery Co.* 7 App. D. C. 169, 174; *Fulton* v. *Fletcher,* 12 App. D. C. 1, 21; *Babbington* v. *Washington Brewery Co.* 13 App. D. C. 527, 531; *May* v. *Bryan,* 17 App. D. C. 392, 393.)

10. Under D. C. Code, sec. 499 [31 Stat. at L. 1268, chap. 854], providing that a deed conveying an interest in real estate shall take effect, as against creditors without notice, only from the time of recording, a judgment creditor, who files a bill in equity to subject the equitable interest of his debtor to the satisfaction of the judgment, has priority over a grantee of such equitable interest, who does not record his deed till after the filing of the bill and service of process, although the deed is executed prior to that date.

No. 1597.   Submitted October 19, 1905.   Decided November 8, 1905.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, dismissing a bill in equity to subject an equitable interest of the defendant in certain land to the satisfaction of a judgment.     *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Thomas C. Taylor* and *Mr. Jesse C. Adkins* for the appellant.

*Mr. C. F. Carusi* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The appellant, Henry S. Berlin, appeals from a decree dismissing its bill filed to subject the equitable interest of Henry S. Berlin in certain lands to the lien of a judgment. The original bill was filed May 13, 1902, and on October 29, 1902, a supplemental bill was filed making one George A. Green a party defendant, as the holder of an assignment of the interest aforesaid of Henry S. Berlin, unrecorded at the time of filing the original bill.

From bill and answers, together with a stipulation reciting certain facts as agreed upon, on which the cause was submitted, the following facts appear:

(1) On May 13, 1901, the Ohio National Bank recovered a judgment against Henry S. Berlin and Armat Stoddart, in the supreme court of the District, for the sum of $426, with certain interest thereon, and costs of protest, besides costs of suit. Execution issued thereon January 29, 1902, was returned March 31, 1902, *nulla bona,* and the judgment remains unsatisfied.

(2) The will of William Berlin, dated January 5, 1899, and probated about September 25, 1901, vests an interest in the lands of the testator in defendant, Henry S. Berlin. Said lands were subject to a deed in trust executed by said testator October 29, 1891, to secure the payment of a note, part of which remains unpaid. The deed in trust remaining in force, the trustees therein are made parties defendant; but no attack is made upon the validity of the indebtedness, to the extent that it remains unpaid.

(3) The sealed instrument under which George A. Green claims bears date May 8, 1902. It purports to convey to him all of the interest of Henry S. Berlin, under the will of William Berlin, for a consideration of $900. The acknowledgment of this instrument reads as follows:

District of Columbia, ss:

On this eighth day of May in the year of our Lord, 1902, be-

fore me, the subscriber, a notary public in and for the District aforesaid, personally appeared Henry S. Berlin, of Washington, District of Columbia, and made oath in due form of law that the above is his act and signature, and that he has a perfect right to sell, and by this act he has sold the same to George A. Green.                                    Helen E. Parker,
    (Notarial seal.)                           Notary Public.

(4) This assignment was filed for record in the office of the recorder of deeds for the District of Columbia, and recorded on May 26, 1902, at 10:50 o'clock A. M.

2. The first contention of the appellant is that its judgment became a lien upon the equitable estate of the judgment debtor, Henry S. Berlin, by virtue of section 1214 of the Code, which went into effect from and after January 1, 1902. So much of that section as is important is here recited: "Every final judgment at common law, and every unconditional final decree in equity for the payment of money from the date when the same shall be rendered  *  *  *  shall be a lien on all the freehold and leasehold estates, legal and equitable, of the defendants bound by such judgment, decree,  *  *  *  in any lands, tenements, or hereditaments in the District, whether such estates be in possession or be reversions or remainders, vested or contingent" [31 Stat. at L. 1381, chap. 854]; *but such liens on equitable interest shall be enforced by a bill in equity.*

(1) The contention of the appellant does not go to the extent of claiming that the lien given by this section relates back to and operates from the date of a judgment rendered prior to its enactment. And clearly it does not. It is a universally accepted rule in the interpretation of statutes that they operate prospectively, in the absence of a contrary intention either expressed or necessarily to be implied.

(2) The question remaining, then, is, whether the lien operates, from and after the passage of the Code, in favor of all judgments then in existence, as well as in favor of those thereafter rendered. The literal meaning of the words *"from the date when the same shall be rendered"* limits the lien to future judg-

ments. To hold that they give a lien to prior judgments from *the date of the enactment* is contrary to the grammatical construction and the plain, natural import of the words. There is no other language in the section warranting an inference that those words were intended to have any other than their literal and natural meaning.

"To get at the thought or meaning expressed in a statute, a contract, or a constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning which involves no absurdity,   *   *   *   then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the legislature have the right to add to it or take from it." *Lake County* v. *Rollins,* 130 U. S. 662, 670, 32 L. ed. 1060, 1063, 9 Sup. Ct. Rep. 651.

Practically the only ground upon which the argument for going beyond the letter of the statute rests is the want of any apparent reason why the legislature should have made a distinction between future judgments and existing ones. Undoubtedly, the lien given by the statute might wisely and justly have been extended to both classes of judgments, but the courts have no power to interpolate words necessary to accomplish that end. They have nothing to do with the motives actuating the legislature.

To a like argument in a case of great hardship, the Supreme Court of the United States, in an early case, made the following reply: "This, it must be admitted, when we consider the mischief the law was probably intended to remedy, is a somewhat technical construction of the act; and cases may be found where courts have construed a statute most liberally to effectuate the remedy; but, where the language of the act is explicit, there is great danger in departing from the words used to give an effect to the law which may be supposed to have been designed by the legislature. Where the language of the act is not clear, and is of doubtful construction, a court may well look at every part of the statute,—at its title, and the mischief intended to be

remedied in carrying it into effect. But it is not for the court to say, where the language of the statute is clear, that it shall be so construed as to embrace cases, because no good reason can be assigned why they were excluded from its provisions. We are unable to say why the benefits of this statute were given to those who held under deeds proved by the subscribing witnesses and withheld from those whose deeds were proved by the acknowledgment of the grantor. In most cases, if not in all, proof by acknowledgment would be deemed more satisfactory than by witnesses; but, the legislature having made a distinction between the cases, whether it was intentional or not, reasonable or unreasonable, the court is bound by the clearly expressed language of the act." *Denn* v. *Reid,* 10 Pet. 524, 527, 9 L. ed. 519, 520.

The distinction above referred to consisted in clearly stating the one kind of proof without naming the others. In construing an important statute in a recent case, the same court said: "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used. He is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation, and simply seek to ascertain the will of the legislator. It is true there are cases in which the letter of the statute is not deemed controlling, but the cases are few and exceptional, and only arise where there are cogent reasons for believing that the letter does not fully and accurately disclose the intent. No mere omission, no mere failure to provide for contingencies, which it may seem wise to have been specifically provided for, justify any judicial addition to the language of the statute." *United States* v. *Goldenberg,* 168 U. S. 95, 102, 42 L. ed. 394, 398, 18 Sup. Ct. Rep. 3.

The appellant's contention is supported by a decision of the supreme court of Texas giving interpretation to a statute closely resembling ours, in which it was held that the lien applied to prior as well as to subsequent judgments, the majority of the court declaring that the words "shall be" should be interpreted as if reading "shall have been." Without pausing to consider

the peculiar conditions in that State arising from former legislation relating to judgment liens, and the operation of stay-laws enacted during and immediately after the war between the States, affording ground for this construction, it is sufficient to say that, if it was justified by those conditions, they do not prevail here; and that, if the letter of the statute was not followed because it would result in a discrimination between the two classes of judgments, then the rule of construction is opposed to that laid down by the Supreme Court of the United States in the cases above cited. In another case relied on by the appellant, there is considerable difference between the statute construed and our section 1214. *Woods* v. *Mains,* 1 G. Greene (Iowa) 275, 292.

3. The next question to be considered is as to the operation of section 499 upon the rights of the parties. As enacted January 1, 1902, it reads as follows: "Sec. 499. When deeds to take effect.—Any deed conveying real property in the District, or interest therein, or declaring or limiting any use or trust thereof, executed and acknowledged and certified as aforesaid and delivered to the person in whose favor the same is executed, shall be held to take effect and pass the title in the property conveyed to said person from the date of the acknowledgment, provided the same be recorded within three months from said date, except that as to creditors and subsequent bona fide purchasers and mortgagees without notice of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the recorder of deeds to be recorded." [31 Stat. at L. 1268, chap. 854.]

This section controls the operation of the deed in this case, though by amendment of June 30, 1902, it has been materially altered.

(1) Since the submission of the case, the appellant, by motion for leave to file a supplemental brief, has, for the first time, raised the question of the sufficiency of the proof of the acknowledgment of the execution of the deed to Green to entitle the same to be recorded. The character of this certificate, however, had not been overlooked. Possibly, though we are not to be

understood as so deciding, the recital of the acknowledgment hereinbefore copied may answer as a certificate, though omitting the formal words, "do hereby certify" as recited in the statutory form. Code, § 493 [31 Stat. at L. 1267, chap. 854]. Likewise, the omission of the formal statement that the grantor acknowledged "the same to be his act and deed," and of the notary public to attest the certificate formally as given under her hand and seal, may be passed. The certificate is, however, fatally defective for the following material omissions: It does not appear that the grantor was personally known to the officer, or that his identity had been proved by the oath of credible witnesses; nor was the instrument identified by the recital of its date. The record of the instrument, therefore, was unauthorized and of no effect as constructive notice. *Lynch* v. *Murphy,* 161 U. S. 247, 253, 40 L. ed. 688, 689, 16 Sup. Ct. Rep. 523. Its effect as notice, however, is of no significance in the present case.

To go further and undertake to determine the effect of this want of acknowledgment and of effective record upon the passage of title to Green would involve the determination whether the word "creditors," as used in section 499, embraces all creditors, whether prior or subsequent to the execution of the unacknowledged and unrecorded deed, or those whose claims were contracted after the execution of the instrument, with or without actual knowledge of its contents, or only those creditors who may have acquired some recognizable lien thereafter, with or without such actual knowledge; and also whether, through failure of acknowledgment and record, it even took effect as to the grantor. These are questions concerning which there has been much contrariety of decision in the States whose statutes have in view the same general object; and, under the circumstances, we prefer to pass them and rest our decision on another ground, sufficient for all the purposes of this case, upon which we have had the benefit of oral, as well as printed, argument.

(2) In the consideration of this point, the necessary facts are these: The bill to obtain satisfaction of the judgment and of the equitable interest of the judgment debtor was filed May

13, 1902. The deed conveying that interest to the defendant Green, of which complainant, had no notice, was executed and delivered May 8, 1902. The actual recordation of this deed, though ineffectual in law, did not take place until May 26, 1902, after the service of process upon Henry S. Berlin, the maker thereof.

Execution upon complainant's judgment could not be levied upon the equitable estate of the judgment debtor, and had been returned *nulla bona,* prior to filing of the bill. The only remedy for the satisfaction of the judgment was, therefore, in equity. *Morsell* v. *First Nat. Bank,* 91 U. S. 357, 23 L. ed. 436. Even the liens now given upon such interests to judgments rendered since January 1, 1902, by section 1214, can only be enforced by bill in equity. No execution could be had at law, because the courts of law refused recognition to such interests. To supply this defect, or rather inadequacy, of the legal remedy, the remedy in equity was devised by way of an equitable execution. *Freedman's Sav. & T. Co.* v. *Earle,* 110 U. S. 710, 28 L. ed. 302, 4 Sup. Ct. Rep. 226. A concise history of the origin and development of the equitable remedy is given in the opinion of Mr. Justice Matthews in that case, who says (p. 717, L. ed. p. 304, Sup. Ct. Rep. p. 230): "The filing of the bill in cases of equitable execution is the beginning of executing it." This beginning of execution, as he says (p. 719, L. ed. p. 304, Sup. Ct. Rep. p. 231), by "the filing of a bill by an execution creditor to subject the equity of the debtor in his lifetime, created a lien and gave him a legal preference." And this lien, he further says (p. 720, L. ed. p. 305, Sup. Ct. Rep. p. 231), "is given by the court in the exercise of its jurisdiction to entertain the bill and to grant the relief prayed for."

The filing of the bill necessarily gives the judgment creditor the same right of preference by way of this special lien as is acquired by the levy of an execution upon the legal estate of the judgment debtor. The doctrine of the case cited has frequently been applied in this court. *Gottschalk Co.* v. *Live Oak Distillery Co.* 7 App. D. C. 169, 174; *Fulton* v. *Fletcher,* 12 App. D. C. 1, 21; *Babbington* v. *Washington Brewery Co.* 13

App. D. C. 527, 531; *May* v. *Bryan,* 17 App. D. C. 392, 393. In *Fulton* v. *Fletcher, supra,* it was said: "The court did not err in charging the jury that the plaintiff acquired a lien upon the property described in the bill. It was an equitable interest that could not be reached by execution, and the filing of the bill was the commencement of the lien." And in *May* v. *Bryan, supra,* it was said: "The filing of the bill, and the notification issued for appearance thereto, created a lien on the equitable estate or assets of the judgment debtor, described in the bill and the amendments thereto; and no subsequent disposition of that estate or those assets could displace or defeat that lien."

None of the foregoing cases involved the particular question here raised between the plaintiff in such a proceeding and an assignee or grantee of the equitable interest under a conveyance thereof, whether made after or before (but without registration) the filing of the bill. But they do affirm the creation of a special lien thereby; and the holder thereof is a creditor, within the meaning of section 499, under even the most limited construction that has ever been given by any court to a similar statute. Without citing the conflicting decisions under such statutes, it may be said that they are divided into three classes. The first class embraces all ordinary creditors within the comprehension of the statute. Another excludes all but creditors whose claims arose between the date of the conveyance and its regular filing for record. The third excludes all save those who, before the filing for record, have acquired or fastened a lien upon the property. The judgment creditor having brought himself within this most limited class of creditors is entitled to the enforcement of his judgment by a decree for the sale of the equitable interest described in the bill as against the right of the defendant Green, who did not undertake to record his conveyance until after the bill had been filed.

For the error pointed out, the decree will be reversed with costs, and the cause remanded, with directions to enter a final decree for the complainant in accordance with the prayers of its bill.                    *Reversed.*